UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| In re: ) ) ) QVL PHARMACY HOLDINGS, INC., ) ) Debtor. ) ) | Chapter 11 Case No. 15-14983-FJB |
| QVL PHARMACY HOLDINGS, INC. ) ) Plaintiff, ) ) v. ) ) ASCLEPIUS PANACEA, LLC, ) ASCLEPIUS PANACEA GP, LLC, ) DAILY PHARMACY, LLC, DAILY ) PHARMACY GP, LLC, AND TOTH ) ENTERPRISES II, P.A. D/B/A ) VICTORY MEDICAL CENTER ) ) Defendants. ) | Adversary Proceeding No.: |

ADVERSARY COMPLAINT AND
OBJECTION TO CLAIM #s 29, 30, 31 AND 32

In accordance with Bankruptcy Rule 7001(1), Debtor/Plaintiff, QVL Pharmacy Holdings, Inc. alleges as follows for its Adversary Complaint against Defendants, Asclepius Panacea, LLC, Asclepius Panacea GP, LLC, Daily Pharmacy, LLC, Daily Pharmacy GP, LLC and Toth Enterprises II, P.A. d/b/a/ Victory Medical Center. Also, pursuant to Bankruptcy Rule 3007(b), the Debtor includes in this Adversary Proceeding its Objections to Claim #s 29, 30, 31 and 32 filed with this Court by Defendants on March 15, 2016.

INTRODUCTION

This is an action for breach of contract and indemnification by the Debtor/Plaintiff, QVL Pharmacy Holdings, Inc. ("Debtor") arising out of Defendants' Asclepius Panacea, LLC, Asclepius Panacea GP, LLC, Daily Pharmacy, LLC, Daily Pharmacy GP, LLC and Toth Enterprises II, P.A. d/b/a/ Victory Medical Center (collectively, the "Defendants") contractual agreements to indemnify the Debtor and its affiliates and representatives and a breached contractual total limitation of liability.

On December 31, 2013, the Debtor, a holding company, and two of its subsidiaries sold all if its equity interests in two pharmacies, one located in Houston, Texas and one located in Austin, Texas to Defendants. As part of the sale of the two pharmacy locations, the Debtor and Defendants entered into a Partnership Interests Purchase Agreement (the "Purchase Agreement") and a Transition Services Agreement (the "Services Agreement"). Both the Purchase Agreement and Services Agreement contain indemnification provisions requiring the Defendants to indemnify, defend and hold harmless the Debtor and its affiliates and representatives from any and all losses relating to or arising out of the provision of, or failure to provide, services to Defendants in accordance with both the Purchase Agreement and Services Agreement. The Debtor, having been forced to defend itself from a lawsuit brought by Defendants and arising out of the Purchase Agreement, has incurred significant damages for which it is entitled to indemnity from the Defendants. By bringing suit against the Debtor and others, Defendants have breached the limitation on liability provision of the Services Agreement.

On December 31, 2013, the Debtor and the Defendants entered into a Priority and Release Agreement (the "Release Agreement"). The Release Agreement contains a choice of law provision requiring that it be governed by, and construed in accordance with, the laws of the

2

Commonwealth of Massachusetts. In the Release Agreement, the Debtor and the Defendants also agreed to the exclusive jurisdiction and venue of Suffolk County, Massachusetts or the United States Federal Court for the District of Massachusetts for the resolution of any disputes among them. Notably, the Purchase Agreement, the Services Agreement and the Release Agreement all contain jury trial waivers.

In November 2014, the Defendants filed suit against the Debtor and others in Texas State Court, claiming damages stemming from their purchase of the two pharmacy locations from the Debtor. The Debtor removed the state court proceeding to the United States Bankruptcy Court for the Western District of Texas and has sought its transfer to this Court. Defendants have opposed and have sought remand.

Further, the Debtor herein objects to the Claims filed by Defendants in accordance with Bankruptcy Rule 3007(b).

## PARTIES

1.      The Debtor is a Delaware corporation with a principal place of business located at 800 Boylston Street, 16th Floor, Boston, Massachusetts 02119.

2.      Defendant, Asclepius Panacea, LLC, is a limited liability corporation formed under the laws of the State of Texas.

3.      Defendant, Asclepius Panacea GP, LLC, is a limited liability corporation formed under the laws of the State of Texas.

4.      Defendant, Daily Pharmacy, LLC, is a limited liability corporation formed under the laws of the State of Texas.

5.      Defendant, Daily Pharmacy GP, LLC, is a limited liability corporation formed under the laws of the State of Texas.

6.      Defendant, Toth Enterprises II, P.A., d/b/a Victory Medical Center, is a professional association corporation formed under the laws of Texas.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this proceeding pursuant to the provisions of 28 U.S.C. §§ 157, 1334(e)(1).

8.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(A), (B), (K) and (O).

9.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1409 and the exclusive venue provision in the Release Agreement.

## FACTS COMMON TO INDEMNIFICATION COUNT AND OBJECTION TO CLAIMS 29, 30, 31, and 32

10.     The Debtor previously operated a small chain of retail pharmacies in Texas and Louisiana specializing in hard-to-find medications (including controlled medications) and dispensing medication in accordance with written prescriptions.

11.     On December 31, 2013, the Debtor sold its equity interest in two pharmacy locations, Austin, Texas and Houston, Texas, to the Defendants under the terms of the Purchase Agreement. The Austin location was sold for $509,145 and the Houston location for $207,706. The sale of the two pharmacies was financed by a $675,000 promissory note issued to White Winston Select Asset Funds LLC ("White Winston").

12.     In order to sell prescription medication in Texas, a retail pharmacy must hold several licenses from the various Texas and Federal licensing authorities. The Debtor held the necessary licenses for its Austin and Houston locations. The Defendants did not have the required licenses and could not apply for the transfers of the licenses until after the December 31, 2013 sale.

13. To facilitate continued prescription medication sales following the Purchase Agreement closing, the Debtor and Defendants entered into the Services Agreement. Under the terms of the Services Agreement, until such time as the Defendants received the required licensing to sell medication, the Debtor would order medication from its supplier, AmeriSource Bergen Drug Corporation ("AmeriSource") on behalf of the Defendants and handle other related services. The Debtor would subsequently collect payment from the patients' insurance carriers for the prescribed medication. This arrangement was to last until the Defendants received their state and federal licenses to sell prescription medication. Importantly, the Debtor made no representations or warranties as to its ability to purchase medication from AmeriSource. Rather, the Debtor agreed that the Defendants would be able to purchase whatever drug inventory the Debtor itself would have been permitted to purchase with its account.

14. In January of 2014, just weeks after the sale of the pharmacies to Defendants, the Defendants went on an ordering frenzy and ordered so much medication that they exceeded the Debtor's credit line at the time with AmeriSource.

15. On January 31, 2014, White Winston agreed to fund an additional $182,000 to Defendants which would allow for an increase in the AmeriSource credit limit.

16. Despite the additional funding, Defendants continued to exceed the credit limit on Debtor's AmeriSource account. AmeriSource would not permit the Defendants to open their own account until the state and federal licenses had been issued to them by the appropriate licensing authorities. Thereafter, the Defendants stopped purchasing medication inventory from AmeriSource and began using a third party vendor.

17. On November 10, 2014, Defendants brought a Texas State Court action against the Debtor and others in the District Court of Travis County ("Texas State Court Action").

5

18. The Debtor filed a voluntary petition under Chapter 11 on December 29, 2015 (the Petition Date").

19. Prior to the Petition Date, as a direct result of the claims brought against the Debtor by the Defendants, the Debtor was forced to expend $348,135.15 to defend itself in the Texas State Court Action. Since the Petition Date, the Debtor has incurred, and continues to incur, additional legal fees and expenses related to the Texas State Court Action.

20. On March 24, 2016, the Debtor, together with another Defendant in the Texas State Court Action, filed a Notice of Removal, removing the Texas State Court Action to the Austin Division of the United States Bankruptcy Court for the Western District of Texas. The Debtor has filed a Motion to Transfer Venue from the United States Bankruptcy Court for the Western District of Texas to this Court. The Defendants have opposed the Motion to Transfer Venue and filed a Motion for Remand and Abstention. As of the date of this Adversary Complaint, both of these motions are pending and are scheduled to be heard in Austin, Texas on June 15, 2016.

21. Sections 7.3-7.3.3 of the Purchase Agreement contain indemnification provisions and provide in pertinent part:

> From and after the Closing Date, Buyers and Guarantors shall, jointly and severally, indemnify and hold harmless Sellers and their Affiliates and directors, managers, officers, employees, agents, successors and assigns and legal representatives, from and against all Indemnifiable Losses…arising out of:
>
> any misrepresentation breach of any warranty, or breach or non-fulfillment of any covenant or agreement to be performed by any Buyer or Guarantor under this Agreement or any document, instrument, certificate or other item furnished or to be furnished to any Seller pursuant hereto or thereto in connection with the transactions contemplated herein or therein;
>
> liabilities and obligations, including Taxes, associated with the operation of any Company's business arising in respect of activities and periods ending after the Closing Date….

6

any Legal Proceeding or Order arising out [of] any of the foregoing even though such Legal Proceeding or Order may not be filed, become filed, or come to light until after the Closing Date.

A true and accurate copy of the December 31, 2013 Purchase Agreement is attached hereto as Exhibit A.

22.     Likewise, the Services Agreement, at Section 5.02, contains an indemnification provision requiring the buyer Defendants to defend and hold the seller Debtor and others harmless from any losses arising out of or resulting from the post-closing services agreed upon in the Services Agreement.  A true and accurate copy of the Services Agreement is attached hereto as Exhibit B.

23.     Section 5.01 of the Services Agreements contains a limitation on liability and states:

> In no event shall Seller or any of its Affiliates have any liability under any provision of this Agreement for any punitive, incidental, consequential, special or indirect damages, including loss of future revenue or income, loss of business reputation or opportunity relating to the breach or alleged breach of this Agreement, or diminution of value or any damages based on any type of multiple, whether based on statute, contract, tort, or otherwise, and whether or not arising from the other party's sole, joint, or concurrent negligence….

24.     In connection with the sale of the two pharmacy locations to Defendants, the parties also entered into the Release Agreement.  Section 9 of the Release Agreement includes a choice of venue and law provision making Massachusetts the exclusive venue and provides:

> This Security Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts, without giving effect to such jurisdiction's principles of conflict of laws.  Each of the parties hereto consents to the exclusive jurisdiction and venue of the courts, as the case may be, of Suffolk County, Massachusetts or the United States Federal Court for the District of Massachusetts.

7

A true and accurate copy of the December 31, 2013 Release Agreement is attached hereto as Exhibit C.

25. The Purchase Agreement, the Services Agreement and the Release Agreement all contain jury trial waivers.

26. On March 15, 2016, Claim #s 29, 30, 31 and 32 were filed with this Court by the Defendants for damages allegedly suffered by Defendants arising from their purchase of the two pharmacy locations from Debtor and others. Claim #s 29 and 30, filed by Asclepius Panacea GP, LLC and Asclepius Panacea, LLC respectively, are for $509,144.78. Claim #s 31 and 32, filed by Daily Pharmacy GP, LLC and Daily Pharmacy, LLC respectively, are for $207,706.57. The Services Agreement was attached to each of Defendants' Proofs of Claim.

## COUNT I
### (Breach of Contract)

27. The Debtor repeats and realleges the facts set forth above in Paragraphs 1-26 of its Adversary Complaint as if specifically set forth herein.

28. The Debtor and Defendants entered into the Services Agreement, a valid and binding contract on all parties to it.

29. Section 5.01 of the Services Agreement contains a provision limiting the Debtor's liability for any damages "under any provision" of the Services Agreement.

30. Defendants have breached the Services Agreement by filing the Texas State Court Action against the Debtor and forcing the Debtor to defend itself against alleged damages exceeding the liability and damages limited by contract.

31. The Debtor has incurred significant legal fees and expenses as a direct and proximate result of Defendants' breach of the limitation of liability provision of the Services Agreement.

WHEREFORE, the Debtor respectfully requests that the Court enter judgment in its favor on Count I of its Adversary Complaint for breach of the Transition Services Agreement and grant such other and further relief as is just.

### COUNT II
**(Indemnification)**

32. The Debtor repeats and realleges the facts set forth above in Paragraphs 1-31 of its Adversary Complaint as if specifically set forth herein.

33. Both the Purchase Agreement and the Services Agreement contain indemnification provisions requiring the Defendants to indemnify, defend and hold harmless the Debtor.

34. Defendants are obligated to indemnify Debtor from and against any losses relating to or arising out of both the Services Agreement and Purchase Agreement.

35. The Debtor suffered pre-petition losses of $348,135.15 defending itself it the Texas State Court Action and continues to suffer additional losses related to its defense of a lawsuit brought by Defendants.

36. Should Defendants obtain any judgment against the Debtor, Debtor is indemnified by the Defendants for such amounts.

37. Defendants are required to indemnify the Debtor for all losses suffered by Debtor as a result of the filing and prosecution of the Texas State Court Action.

WHEREFORE, the Debtor respectfully requests that the Court enter judgment in its favor on Count II of its Adversary Complaint for indemnification and grant such other and further relief as is just.

## COUNT III
### (Objection to Claims #s 29, 30, 31 and 32)

38. The Debtor repeats and realleges the facts set forth above in Paragraphs 1-37 of its Adversary Complaint as if specifically set forth herein.

39. Proof of Claim # 29 was filed by Asclepius Panacea GP, LLC in the amount of $509,144.78 on March 15, 2016. For the reasons set forth herein, the Debtor objects to Claim # 29 in its entirety on the grounds set forth herein that the Debtor owes nothing to Defendants on account of the Defendants agreement to indemnify the Debtor and to limit the Debtor's liability.

40. Proof of Claim # 30 was filed by Asclepius Panacea, LLC in the amount of $509,144.78 on March 15, 2016. For the reasons set forth herein, the Debtor objects to Claim # 30 in its entirety on the grounds set forth herein that the Debtor owes nothing to Defendants on account of the Defendants agreement to indemnify the Debtor and to limit the Debtor's liability.

41. Proof of Claim # 31 was filed by Daily Pharmacy GP, LLC in the amount of $207,706.57 on March 15, 2016. For the reasons set forth herein, the Debtor objects to Claim # 31 in its entirety on the grounds set forth herein that the Debtor owes nothing to Defendants on account of the Defendants agreement to indemnify the Debtor and to limit the Debtor's liability.

42. Proof of Claim # 32 was filed by Daily Pharmacy, LLC in the amount of $207,706.57 on March 15, 2016. For the reasons set forth herein, the Debtor objects to Claim # 32 in its entirety on the grounds set forth herein that the Debtor owes nothing to Defendants on account of the Defendants agreement to indemnify the Debtor and to limit the Debtor's liability.

WHEREFORE, the Debtor respectfully requests that the Court enter an Order sustaining Debtor's objections to Claim #s 29, 30, 31 and 32, disallowing them and grant such other and further relief as is just.

WHEREFORE, Debtor prays this Honorable Court award Debtor damages as a result of Defendants' breach of contract and agreements to indemnify Debtor, sustain its objections to Claim #s 29, 30, 31, and 32 and disallow them and grant such other and further relief as is just.

        QVL Pharmacy Holdings, Inc.,
        Debtor/Plaintiff

        By its attorneys,

        /s/ Todd B. Gordon
        Stephen F. Gordon (BBO No. 203600)
        Todd B. Gordon (BBO No. 652482)
        Katherine P. Lubitz (BBO No. 679045)
        The Gordon Law Firm LLP
        River Place
        57 River Street
        Wellesley, Massachusetts 02481
        Tel:   (617) 261-0100
        Fax:  (617) 261-0789
        Email: sgordon@gordonfirm.com
                  tgordon@gordonfirm.com
                  klubitz@gordonfirm.com

Dated: June 6, 2016

P:\Clients-GLF\QVL Pharmacy\Plead (Adversary Proceeding)\Complaint and Obj to Victory Claims.docx