UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| QVL PHARMACY HOLDINGS, INC., | ) | Case No. 15-14983-FJB |
| | ) | |
| Debtor | ) | |

## PLAN OF REORGANIZATION
## DATED JUNE 7,  2016

QVL Pharmacy Holdings, Inc., the Debtor and the Debtor-in-possession herein, proposes the following Chapter 11 Plan of Reorganization:

## ARTICLE I
## SUMMARY

This Plan of Reorganization (the "Plan) under chapter 11 of the Bankruptcy Code (the "Code") is filed by QVL Pharmacy Holdings, Inc. (the "Debtor") and proposes to pay creditors from collections on accounts receivable and an infusion of capital.

This Plan provides for three (3) Classes of Secured Claims, one (1) Class of General Unsecured Claims, and one (1) Class of holders of Equity Interest.  Secured Creditors will receive either the value of the Collateral securing their Claim or participation in the Reorganized Debtor's equity.  Unsecured Creditors will receive payment from collections of the Debtor's Accounts Receivable as administered through a Liquidating Trust proposed to be created. This Plan also provides for the payment of Administrative, Priority Tax, and Priority Claims (to the extent they are Allowed).

All Creditors and holders of Equity Interest should refer to Articles III through V of this Plan for information regarding the precise treatment of their claim. A Disclosure Statement that provides more detailed information regarding this Plan and the rights of Creditors and holders of Equity Interest has been circulated with this Plan.

**Your rights may be affected. You should read these papers carefully and discuss them with an attorney.**

## ARTICLE II
## DEFINITIONS

2.1.   <u>Scope of Defined Terms</u>.  For purposes of this Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings in Article II of this Plan.  Unless the context otherwise requires,

any capitalized term used and not defined in this Plan, but that is defined in the Bankruptcy Code, shall have the meaning ascribed in the Bankruptcy Code. In all references herein to any parties, Persons, Entities, or corporations, the use of any particular gender or the plural or singular number is intended to include the appropriate gender or number as the text may require.

2.2. <u>2011 Notes</u> means those certain Senior Secured Convertible Promissory Notes issued by the Debtor on April 29, 2011, as amended.

2.3. <u>2011 Noteholders</u> means the holders of the 2011 Notes.

2.4. <u>2013 Notes</u> means those certain 2013 Senior Secured Convertible Promissory Notes Agreement issued by the Debtor pursuant to the terms of a Master Credit Facility and Loan Modification Agreement dated as of February 1, 2013, as amended.

2.5. <u>2013 Noteholders</u> means the holders of the 2013 Notes.

2.6. <u>Accounts Receivable</u> means the Debtor's accounts receivable or other amounts due the Debtor relating to the ordinary course operation of its business existing prior to the Petition Date.

2.7. <u>Administrative Bar Date</u> means the date that is seven (7) days prior to the date for the Confirmation Hearing for Administrative Expense Claims (other than trade vendor claims for goods and services sold to the Debtor in the ordinary course of business and Professional Claims) arising during the period commencing on the Petition Date.

2.8. <u>Administrative Expense Claim</u> means any Claim (other than Priority Tax Claims and Professional Claims) constituting a cost or expense of administration of the Estate under Sections 503(b) and 507(a)(2) of the Bankruptcy Code during the period from the Petition Date up to and including the Effective Date, including, without limitation, any Claim for compensation and reimbursement of expenses arising during the period from and after the respective Petition Date and prior to the Effective Date to the extent Allowed by Final Order of the Bankruptcy Court under Section 503(b) of the Bankruptcy Code or otherwise in accordance with the provisions of this Plan, whether fixed before or after the Effective Date, and any fees or charges assessed against an Estate pursuant to Section 1930 of chapter 123 of title 28 of the United States Code.

2.9. <u>Allowed</u> means, with reference to any Claim against the Estate, (a) any Claim that has been listed by the Debtor in its Schedules, as such Schedules may be amended by the Debtor from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of claim has been filed; (b) any Claim expressly allowed by this Plan; (c) any timely filed Claim that is not disputed or as to which no objection to allowance has been timely interposed in accordance with this Plan hereof or such other period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court; (d) any Claim that is compromised, settled, or otherwise resolved pursuant to the authority

granted to the Reorganized Debtor pursuant to a Final Order of the Bankruptcy Court; or (e) any Disputed Claim that has been Allowed by Final Order; provided, however, that Claim, if any, allowed solely for the purpose of voting to accept or reject this Plan pursuant to an order of the Bankruptcy Court under Bankruptcy Rule 3018(a) (to the extent such rule does not exceed the rule-making authority under 28 U.S.C. § 2075) shall not be considered "Allowed" hereunder; provided, further, that unless otherwise specified herein or by order of the Bankruptcy Court, "Allowed Administrative Expense Claim" or "Allowed Claim" shall not, for any purpose under this Plan, include interest on such Administrative Expense Claim or Claim from and after the Petition Date, unless such interest is expressly provided for in this Plan.

2.10.   Avoidance Actions means Causes of Action of the Debtor or the Estate arising under Sections 502, 510, 541, 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code, or under related state or federal statutes and common law, including fraudulent transfer laws, whether or not litigation is commenced to prosecute such Causes of Action.

2.11.   Ballot means the form distributed to each holder of an Impaired Claim entitled to vote to accept or reject the Debtor's Plan, on which form the holder may cast its vote with respect of this Plan.

2.12.   Bankruptcy Court means the United States Bankruptcy Court for the District of Massachusetts, and such other court having original and exclusive subject matter jurisdiction over the Chapter 11 Case pursuant to 28 U.S.C. § 1334(a).

2.13.   Bankruptcy Rules means the Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court pursuant to Section 2075 of title 28 of the United States Code, and any local rules of the Bankruptcy Court, as amended from time to time and applicable to the Chapter 11 Case.

2.14.   Bar Date means March 15, 2016, the date fixed by order of the Bankruptcy Court by which Persons asserting a Claim against the Debtor or its property must file a proof of claim or be forever barred from asserting a Claim against the Debtor or its property and from voting on the Plan and/or sharing in distributions hereunder.

2.15.   Business Day means a day other than a Saturday, a Sunday, or any other day on which commercial banks in Boston, Massachusetts are required or authorized to close by law or executive order.

2.16.   Cash means the lawful currency of the United States of America.

2.17.   Causes of Action means any action, claim, cause of action, controversy, demand, right, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured

or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law. Cause of Action also includes (a) any right of setoff, counterclaim, or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any claim pursuant to Section 362 of chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in Section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim.

2.18.  Chapter 11 Case means the Debtor's case under Chapter 11 of the Bankruptcy Code pending in the Bankruptcy Court.

2.19.  Claim means a claim against a Person or its property as defined in Section 101(5) of the Bankruptcy Code, including, without limitation, (a) any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

2.20.  Class means a category of Claims or Equity Interests set forth in Article IV of this Plan.

2.21.  Collateral means any property or interest in property of the Estate subject to an unavoidable Lien securing the payment or performance of a Claim.

2.22.  Common Stock means the total of (a) 332,574 shares of the common stock of the Debtor that had been issued and outstanding as of the Petition Date; and (b) those additional shares of the Debtor's common stock to be issued on the Confirmation Date as part of the Plan, par value $0.01 per share.

2.23.  Confirmation Date means the date on which the Confirmation Order is entered on the docket of the Bankruptcy Court.

2.24.  Confirmation Hearing means the hearing to consider confirmation of this Plan in accordance with Section 1128 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

2.25.  Confirmation Order means the order(s) of the Bankruptcy Court confirming the Plan.

2.26.  Contingent or Unliquidated Claim means any Claim for which a proof of claim has been filed with the Bankruptcy Court (a) which was not filed in a sum certain, or which has not accrued and is dependent upon a future event that has not occurred or may never occur; and (b) which has not been Allowed.

2.27. <u>Creditor</u> means any Entity or Person holding a Claim.

2.28. <u>Credit Facility</u> means those debt securities and/or promissory notes to be issued by the Debtor on the Effective Date as part of the Plan.

2.29. <u>Debtor</u> means QVL Pharmacy Holdings, Inc. a Delaware corporation, the Debtor and the Debtor in possession in the Chapter 11 Case.

2.30. <u>Debtor in Possession or Debtor-in-Possession</u> means the Debtor in its capacity as the Debtor in possession pursuant to Sections 1101(1) and 1107(a) of the Bankruptcy Code.

2.31. <u>Disallowed Claim</u> means (a) a Claim that is disallowed in its entirety by an unreversed order of the Bankruptcy Court or another court of competent jurisdiction, as the case may be; or (b) any Claim, proof of which was required to be filed by order of the Bankruptcy Court, but as to which a proof of claim was not timely or properly filed.

2.32. <u>Disbursing Agent</u> means the Reorganized Debtor or its designee.

2.33. <u>Disclosure Statement</u> means the disclosure statement filed by the Debtor with this Plan as required pursuant to Section 1125 of the Bankruptcy Code.

2.34. <u>Disputed Claim</u> means a Claim that is not an Allowed Claim or a Disallowed Claim, and is a Claim, proof of which was filed, or an Administrative Expense Claim or other unclassified Claim (in each case, proof of which was filed, which is the subject of a dispute under this Plan or as to which Claim a the Debtor has interposed or may interpose a timely objection and/or a request for estimation in accordance with Section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018 or other applicable law, which dispute, objection, and/or request for estimation has not been withdrawn or determined by a Final Order.

2.35. <u>Distribution</u> means a payment of Cash, or distribution of the Reorganized Debtor Stock, as applicable, made by the Disbursing Agent to the holder of an (a) Allowed Claim on account of such Allowed Claim pursuant to the terms and provisions of this Plan; or (b) an Allowed Equity Interest on account of such Allowed Equity Interest pursuant to the terms and provisions of this Plan.

2.36. <u>Distribution Date</u> means the Effective Date of this Plan or as soon thereafter as is reasonably practicable, and each ninety (90) days thereafter.

2.37. <u>Effective Date</u> means the date set forth in Section 14.1 of this Plan.

2.38. <u>Encumbrance</u> means, with respect to any asset, a mortgage, Lien, pledge, charge, security interest, assignment, or encumbrance of any kind or nature in respect of such asset (including, without express or implied limitation, any conditional sale or other

title retention agreement, any security agreement, and the filing of, or agreement to give, any financing statement under the Uniform Commercial Code or comparable law of any jurisdiction).

2.39. Entity means an individual, a corporation, a general partnership, a limited partnership, a limited liability company, a limited liability partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, a governmental unit or any subdivision thereof, including, without limitation, the United States Trustee, or any other entity.

2.40. Equity Exit Funding means the $100,000 of funding to be provided by members of Class 4 on the Confirmation Date.

2.41. Equity Interest means any equity interest or proxy related thereto, direct or indirect, in the Debtor represented by duly authorized, validly issued, and outstanding stock, or any other instrument evidencing a present ownership interest, direct or indirect, inchoate or otherwise, in the Debtor, or right to convert into such an equity interest or acquire any equity interest of the Debtor, whether or not transferable, or an option, warrant or right, contractual or otherwise, to acquire any such interest, which was in existence prior to or on the Petition Date; provided, however, for the avoidance of doubt, the term "Equity Interest" shall not include or pertain to any new equity interest issued pursuant to this Plan.

2.42. Estate means the estate of the Debtor as created under Section 541 of the Bankruptcy Code.

2.43. Executory Contract means a contract or unexpired lease to which the Debtor is a party and which is subject to assumption, assumption and assignment, or rejection under Section 365 of the Bankruptcy Code.

2.44. Exit Funding means, collectively, the $250,000 of funding which includes the Equity Exit Funding, and the $150,000 to be provided by Class 1B on the Confirmation Date..

2.45. Final Order means an order or judgment of the Bankruptcy Court or any other court of competent jurisdiction as to which the time to appeal, petition for certiorari, or move for re-argument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for re-argument or rehearing shall then be pending; or as to which any right to appeal, petition for certiorari, re-argue or rehear shall have been waived in writing in form and substance satisfactory to the Reorganized Debtor. Potential requests for relief pursuant to Fed. R. Civ. P. 60, made applicable by Bankruptcy Rule 9024, shall not negate finality.

2.46. Floor Payment means that payment to be made by White Winston to the Liquidating Trust on or about the date of the first anniversary of the Confirmation Date equal to the difference between (a) fifteen percent (15%) of the Accounts Receivable; and (b)

the amount of Accounts Receivable collected by the Liquidating Trust by that date, but in no event shall the payment exceed One Hundred Thousand Dollars ($100,000).

2.47.   General Unsecured Claims means any claims against the Debtor, including without limitation, (a) any Claim against the Debtor arising from the rejection of an Executory Contract under Section 365 of the Bankruptcy Code including any claims for damages arising from the termination of any employment agreement, except as otherwise provided herein; (b) any portion of a Claim that is not a Secured Claim (i.e., a deficiency claim); and (c) any Claims against the Debtor arising from the provision of goods or services to the Debtor prior to the Petition Date, including the Claims of commercial trade creditors that are not Administrative Claims under Section 503(b)(9) of the Bankruptcy Code.  For the avoidance of doubt, General Unsecured Claims shall not include (a) Administrative Expense Claims; (b) Priority Tax Claims; (c) Priority Claims; and (d) Secured Claims.

2.48.   Impaired means impaired within the definition of Section 1124 of the Bankruptcy Code.

2.49.   Lien means any charge against or interest in Collateral to secure payment of a debt or performance of an obligation.

2.50.   Liquidating Trust means that Massachusetts trust to be created for the benefit of the Creditors holding Class 3 Claims and to which all of the Accounts Receivable shall be assigned, free and clear of Liens, on the Confirmation Date.

2.51.   Person means any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated association or organization, governmental agency or political subdivision thereof.

2.52.   Petition Date means December 29, 2015, the date on which the Debtor filed the Petition for relief commencing this Chapter 11 case.

2.53.   Plan shall mean this Chapter 11 Plan, and all exhibits, supplements, appendices and schedules hereto and thereto, either in its present form or as the same may be altered, amended or modified from time to time.

2.54.   Plan Administrative Expense means all reasonable costs, expenses and fees incurred in connection with maintaining the Estate and consummating the Plan, including, without limitation, (a) all reasonable expenses incurred by the Debtor in consummating the plan, (b) any Administrative Expense Claim that is Allowed after the Effective Date and (c) all other reasonable costs incurred in liquidating and maintaining the Estate in accordance with the Plan.

2.55.   Preferred Stock means, collectively, (a) the 1,579,100 shares of the Series A Convertible Preferred Stock of the Debtor that had been issued and outstanding as of the Petition Date, par value $0.01 per share; and (b) the 57,862 shares of the Series B

Convertible Preferred Stock of the Debtor that had been issued and outstanding as of the Petition Date, par value $0.01 per share.

2.56.   Priority Claims means any and all Claims (or portions thereof), if any, entitled to priority under Section 507(a) of the Bankruptcy Code other than Administrative Expense Claims and Priority Tax Claims.

2.57.   Priority Tax Claim means a Claim of a governmental unit of the kind specified in Section 507(a)(8) of the Bankruptcy Code.

2.58.   Pro Rata Share means, on any Distribution Date, with respect to the holder of an Allowed Claim against or an Allowed Equity Interest in the Debtor's estate, the percentage represented by a fraction, (a) the numerator of which shall be an amount equal to such holder's Claim against or Equity Interest in the Debtor's estate; and (b) the denominator of which shall be an amount equal to the aggregate amount of Allowed, Disputed and estimated Claims or Equity Interests in the same Class as such holder's Claim or Equity Interest, against or in the Debtor's estate.

2.59.   Professional means any professional employed or to be compensated pursuant to Sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code.

2.60.   Released Persons means the (a) the Debtor; (b) White Winston Select Asset Funds LLC in all capacities; (c) any other holder of an Equity Interest; and (d) the directors, managers, officers, shareholders, members, partners, employees, agents, accountants and attorneys of the foregoing.

2.61.   Releasor Parties means each holder of a Claim or Equity Interest (a) who has accepted the Plan; (b) who receives a distribution of property if the Plan is confirmed; or (c) who retains its Equity Interest if the Plan is confirmed.

2.62.   Reorganized Debtor means the Debtor after the Effective Date.

2.63.   Reorganized Debtor Stock means the Common Stock and the Preferred Stock of the Reorganized Debtor.

2.64.   Schedules means the schedules of assets and liabilities, the list of holders of interests and the statements of financial affairs filed by the Debtor under Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules, lists and statements have been or may be supplemented or amended from time to time.

2.65.   Secured Claim means any Claim (i) to the extent reflected in the Schedules or in a proof of Claim, which is validly and unavoidably secured by a Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with Section 506(a) of the Bankruptcy Code; or (ii) that is a valid, unavoidable setoff right in accordance with Sections 506(a) and 553 of the Bankruptcy Code.

2.66.   <u>Tax Code</u> means the Internal Revenue Code of 1986, as amended from time to time.

2.67.   <u>Trustee</u> means Chris Dugan, Esq. of the law firm of Cady & Dugan, P.C. (111 Main Street; 2nd Floor, Suite 2, P.O. Box 2341, Brattleboro, VT 05303. Telephone: (802) 251-0099), the sole Trustee of the Liquidating Trust.

2.68.   <u>Unimpaired</u> when used as an adjective preceding the words "Class of Claims," or "Class" or "Clam" shall mean that the Plan does not alter the legal, equitable, or contractual rights of the member(s) of that class.

2.69.   <u>White Winston</u> means White Winston Select Asset Funds LLC.

2.70.   <u>Rules of Construction</u>.  Unless otherwise expressly provided:

(a)   Article, section, and exhibit references in this Plan are to articles, sections, and exhibits of and to this Plan;

(b)   References to dollars are to the lawful currency of the United States of America;

(c)   References to Claims against the Debtor refer to Claims against the Estate;

(d)   The word "including" and similar words means "including without limitation;"

(e)   References to "on the Effective Date" means on or, as soon thereafter as is practicable, the Effective Date;

(f)   Unless otherwise stated, the words "herein," "hereof," and "thereto" refer to this Plan in its entirety rather than to a particular portion of this Plan;

(g)   Captions and headings in this Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; and

(h)   The rules of construction contained in Section 102 of the Bankruptcy Code shall apply to the construction of this Plan.

**ARTICLE III**

**TREATMENT OF ALLOWED
<u>ADMINISTRATIVE EXPENSE CLAIMS</u>**

3.1   <u>Non-Classification</u>.  As provided in Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims are not classified for the purposes of voting on or receiving distributions under this Plan.  All such Claims are instead treated separately upon the terms set forth in this Article III.

3.2   <u>Administrative Expense Claims</u>.

(a) <u>General</u>.  All Administrative Expense Claims shall be paid in full, in Cash, in such amounts as (i) are incurred in the ordinary course of business by the Debtor pursuant to the normal business terms between the parties; (ii) are Allowed by the Bankruptcy Court upon the later of the Effective Date, the date upon which there is a Final Order allowing such Administrative Expense Claim or any other date specified in such order; or (iii) may be agreed upon

between the holder of such Administrative Expense Claim and the Debtor. Such Administrative Expense Claims shall include undisputed costs incurred in the operation of the Debtor's business after the Petition Date and fees due to the United States Trustee pursuant to 28 U.S.C. § 1930.

(b) <u>Professional Compensation and Expense Reimbursement Claims</u>. All Professionals seeking payment for fees or reimbursement of expenses incurred through and including the Confirmation Date under Sections 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code, (i) shall file their respective final applications for allowances of compensation for services rendered and reimbursement of expenses incurred through the Confirmation Date within forty (40) days after the Confirmation Date; and (ii) if granted such an award by the Bankruptcy Court, shall be paid in full in such amounts as are allowed by the Bankruptcy Court (1) on the later of the Effective Date or the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is practicable; or (2) upon such other terms as may be mutually agreed upon between such holder of an Allowed Administrative Expense Claim and the Debtor.

3.3     <u>Priority Tax Claim</u>s.  There is one (1) Priority Tax Claim totaling $100 held by the Internal Revenue Service.  Carrollton−Farmers Branch Independent School District has also filed a Proof of Claim for a Priority Taxes in the amount of $4,117.40 for Ad Valorem taxes based on personal property not owned by the Debtor (Claim No. 13). The Debtor intends to object to this Proof of Claim on the following bases: (1) the taxes are in fact owed by a subsidiary of the Debtor, not the Debtor itself; and (2) the value of the Estate's interest in the property against which this Claim was assessed was, on the Petition Date, zero.  Therefore under Section 502(b)(3) of the Bankrtupcy Code, this Claim should be Disallowed.  Under the Plan, all Allowed Priority Tax Claims shall be paid in full, in Cash in the amounts approved by the Court on the Effective Date.

## ARTICLE IV

## <u>CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS</u>

All holders of Claims against the Debtor and the Estate, other than Administrative Expense Claims and Priority Tax Claims, are divided into the Classes set forth in this Article IV for all purposes, including voting on, confirmation of and distribution pursuant to the Plan.  A Claim or a portion of a Claim will be placed into a Class only to the extent that the Claim qualifies within the description of such Class and may be in a different Class to the extent that the remainder of a Claim falls in such Class.  A Claim will be entitled to the treatment accorded to a particular class, only to the extent that such claim is an Allowed Claim.  Any holder of a Class 1 Secured Claim shall be deemed to have an Unsecured Claim in Class 3 to the extent the value of the Collateral securing such Claim is less than the amount of the Claim.

<u>Class</u>                                                                                              <u>Status</u>

Class 1 Secured Claims

     Class 1A - General Secured Claims  ...................................... Unimpaired

     Class 1B – White Winston Select Asset Funds LLC, as agent
         for QVL Pharmacy Subsidiaries Funding Group, LLC ............ Impaired

     Class 1C - White Winston  Select Asset Funds LLC, as agent
         for 2013 Noteholders………………………………………….Impaired

     Class 1D - White Winston  Select Asset Funds LLC, as agent
         for 2011 Noteholders………………………………………….Impaired

Class 2 Priority Claims ................................................................ Unimpaired

Class 3 General Unsecured Claims ................................................... Impaired


Class 4 Equity Interests………………………………………………………….Impaired

## ARTICLE V
## <u>TREATMENT OF CLAIMS</u>

5.1   <u>CLASS 1 ALLOWED SECURED CLAIMS</u>.

   (a)   Class 1A Allowed Secured Claims - General Secured

      (i)  <u>Impairment and Voting</u>.   Class 1A is Unimpaired by the Plan. Consequently, each holder of an Allowed Class 1A Secured Claim shall not be entitled to vote to accept or reject the Plan.

      (ii) <u>Treatment</u>.   A holder of an Allowed Class 1A Secured Claim shall receive either a cash payment equal to the amount of the Allowed Secured Claim or the property securing such Allowed Secured Claim, at the Debtor's option to be made not later than 10 days after the Effective Date.

   (b)   Class 1B Allowed Secured Claims – White Winston, as agent for QVL Pharmacy Subsidiaries Funding Group, LLC

      (i)  <u>Impairment and Voting</u>   Class 1B is Impaired by the Plan. Consequently, each holder of an Allowed Class 1B Secured Claim shall be entitled to vote to accept or reject the Plan.

      (ii) <u>Treatment</u>   A holder of an Allowed Class 1B Secured Claim shall receive its Pro Rata Share of a $5.0 Million note secured by a lien on all of the Reorganized Debtor's property to be issued by the Debtor on the Confirmation Date under the Credit Facility.

   (c)   Class 1C Allowed Secured Claims - White Winston, as agent for the 2013 Noteholders

> (i) <u>Impairment and Voting</u>    Class 1C is Impaired by the Plan. Consequently, each holder of an Allowed Class 1C Secured Claim shall be entitled to vote to accept or reject the Plan.
>
> (ii) <u>Treatment</u>    A holder of an Allowed Class 1C Secured Claim shall receive its Pro Rata Share of a $5.0 Million note secured by a lien on all of the Reorganized Debtor's property to be issued by the Debtor on the Confirmation Date under the Credit Facility.

(d) Class 1D Allowed Secured Claims - White Winston, as agent for the 2011 Noteholders

> (i) <u>Impairment and Voting</u>    Class 1D is Impaired by the Plan. Consequently, each holder of an Allowed Class 1D Secured Claim shall be entitled to vote to accept or reject the Plan.
>
> (ii) <u>Treatment</u>    A holder of an Allowed Class 1D Secured Claim shall receive the full amount due, calculated as of the Petition Date, under the 2011 Note held by such holder, paid by the Debtor's issuance of that number of shares of Reorganized Debtor's common stock to such holder, with such Reorganized Debtor's common stock issued at the same price per share paid by each holder of an Equity Interest in the funding of the Equity Exit Funding (refer to Section 5.4(b) herein).

5.2    <u>CLASS 2 ALLOWED PRIORITY CLAIMS</u>.

(a) <u>Impairment and Voting</u>.    Class 2 is Unimpaired by the Plan.  Consequently, each holder of an Allowed Priority Claim shall be not be entitled to vote to accept or reject the Plan.

(b) <u>Treatment</u>. A holder of an Allowed Priority Claim (to the extent there are any) shall receive a cash payment equal to the amount of such Allowed Priority Claim.

5.3    <u>CLASS 3 ALLOWED GENERAL UNSECURED CLAIMS</u>.

(a) <u>Impairment and Voting</u>.    Class 3 is Impaired by the Plan.  Consequently, each holder of an Allowed Class 3 General Unsecured Claim shall be entitled to vote to accept or reject the Plan.

(b) <u>Treatment</u>.    A holder of an Allowed Class 3 General Unsecured Claim shall receive a Pro Rata Share of distributions from the Liquidating Trust.

5.4    <u>CLASS 4 EQUITY INTERESTS</u>

(a) <u>Impairment and Voting</u>.    Class 4 is Impaired by the Plan.  Consequently, each holder of an Equity Interest shall be entitled to vote to accept or reject the Plan.

(b) <u>Treatment</u>. Each holder of an Equity Interest shall be offered the opportunity to tender its Pro Rata Share of the Equity Exit Funding, paid in consideration of additional shares of the Reorganized Debtor's common stock to be issued to such holder on the Confirmation Date at a price of $0.10 per share. Upon

confirmation, regardless of whether a holder of an Equity Interest has tendered its Pro Rata Share of the Equity Exit Funding, such holder shall retain its Equity Interest that had been issued and outstanding on the Petition Date.  If one or more Equity Interest holders choose not to tender, then all other Equity Interest holders who had tendered shall be provided written notice and shall have the right to tender for the non-tendering Equity Interest holders on a first come/first served basis.

## ARTICLE VI

## ADMINISTRATION OF THE PLAN

6.1   Estate Assets Fund the Plan.  Upon confirmation of the Plan,  all assets of the Debtor and its Estate, whether legal or equitable in nature, including, without limitation, Avoidance Actions, will vest in the Debtor to be used as promptly as possible to pay the distributions to the Classes of holders of Allowed Claims provided for in Article V of this Plan.  The Debtor and Estate's Claims and Causes of Action, including, without limitation, the Avoidance Actions, are expressly preserved for the benefit of the holders of Allowed Claims pursuant to Bankruptcy Code Section 1123(b)(3).

6.2   The Liquidating Trust. Upon entry of the Confirmation Order, the holders of Claims in Classes 1B through 1D shall transfer all of their rights to the Accounts Receivable to the Liquidating Trust and White Winston shall effect such transfer. The Liquidating Trust shall be created as an entity under Massachusetts law. Chris Dugan, Esq. shall serve as the sole Trustee of the Liquiding Trust. The Trustee shall have authority to retain professionals, including attorneys and accountants, and pay their fees and costs from its assets.  The Trustee shall have authority to compromise any of the Accounts Receivable and sell all or any part of the Accounts Receivable.  The Liquidating Trust shall file an annual report with the Debtor and such other reports as are reasonably required for the Debtor to comply with its reporting obligations.  On or about the date of the first anniversary of the Confirmation Date, White Winston shall pay the Floor Payment to the Liquidating Trust. The Liquidating Trust may terminate upon White Winston's payment of the Floor Payment. Upon such termination, the remaining assets in the Liquidating Trust, if any, shall be returned to White Winston as agent for the holders of Claims in Classes 1B through 1D.

6.3   The Exit Funding. On the Confirmation Date, the holders of the Allowed Class 1B Claims shall, as a condition to maintaining their interest in the Reorganized Debtor, contribute the sum of $150,000 to the Debtor as an advance under the Credit Facility, and the holders of the Equity Interest shall contribute $100,000 to the Debtor as the Equity Exit Funding.

6.4   Powers and Duties of the Debtor Post-Confirmation.   The Debtor shall have the following powers and duties after confirmation of the Plan:

(a) the Debtor shall have all power and authority to manage and administer its assets and make distributions pursuant to this Plan and orders of the Court;

(b) the Debtor shall have all power and authority to engage attorneys, accountants, and other professionals, as the Debtor determines to be necessary for the administration of the Plan;

(c) the Debtor shall have the power and authority to receive, collect, deposit, and distribute any funds of or due the Estate, in accordance with this Plan;

(d) the Debtor shall have all power and authority to seek a tax opinion or ruling from any local, state, or federal tax authority, or from the Court pursuant to Section 1146(e) of the Code;

(e) the Debtor shall have all power and authority to (i) object to any Claim (ii) seek estimation or disallowance of any Claim, or (c) compromise or settle any Claim;

(f) the Debtor shall have all power and authority to abandon any property or assets that the Debtor determines to be burdensome;

(g) the Debtor shall have the power and authority to defend, litigate, and settle any Claims or Causes of Action; and

(h) the Debtor shall have the power and right to appear in, defend, or otherwise be heard as a party in interest in (i) appeals from the Confirmation Order and any proceedings related thereto; (ii) proceedings related to the enforcement or interpretation of the Plan; (iii) proceedings related to modifications or amendments to the Plan; and (iv) proceedings relating to the allowance of claims for compensation or expenses to Professionals.

6.5    Responsibilities of the Debtor. The Debtor shall exercise reasonable business judgment to administer the Estate and to make timely distributions under the Plan. the Debtor shall have responsibility for filing final federal, state and local tax returns for the Debtor.

6.6    Report to the Bankruptcy Court:  Every six (6) months after the Confirmation Date until a Final Decree is entered or until otherwise ordered by the Bankruptcy Court, the Debtor shall file a written status report with the Court regarding the status of the administration of the Plan.

6.7    Payment of Plan Administrative Expenses. The Debtor may pay Plan Administrative Expenses upon receipt of an invoice therefor without the need for further Bankruptcy Court authorization or entry of a Final Order.  If the Debtor and any Person cannot agree on the amount or timing of payment of Plan Administrative Expenses to be paid to such Person, such amount or timing shall be determined by the Bankruptcy Court.

6.8    Method of Distributions Under the Plan.

(a) In General.  Subject to Bankruptcy Rule 9010, all distributions under the Plan shall be mailed to the address of such holder as listed on the Schedules as of the Distribution Record Date, unless (i) the Debtor has been notified in writing of a change of address before the Confirmation Date; or (ii) the Debtor has been notified in writing of a change of address after the Confirmation Date, including, without limitation, by the filing of a proof of claim or notice

of transfer of claim filed by such holder that provides an address for such holder different from the address reflected on the Schedules.

(b) <u>Distributions of Cash</u>.  Any payment of Cash made by the Debtor pursuant to the Plan shall be made by check drawn on a domestic bank; <u>provided</u>, <u>however</u>, that the Debtor is not obligated to make any Cash payment under the Plan unless the payment exceeds one hundred dollars ($100) nor is the holder entitled to receive such payment unless the payment exceeds one hundred dollars ($100).

(c) <u>Timing of Distributions</u>.  Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

(d) <u>Fractional Cents</u>.  Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole cent (rounding down in the case of .50 or less and rounding up in the case of more than .50).

(e) <u>Reversion to the Debtor</u>.  The following amounts shall revert to the Debtor and shall be distributed pursuant to the Plan: (i) distributions under the Plan that are unclaimed for a period of one year after the date of such distribution; and (ii) distributions under the Plan that are less than one hundred dollars ($100) in amount.

6.9     <u>Sources of Consideration for Plan Distributions</u>.  Except as otherwise provided in this Plan or the Confirmation Order, all consideration necessary for the Reorganized Debtor to make payments pursuant to this Plan shall be obtained from the existing Cash balances of the Debtor, a cash contribution by holders of Allowed Class 1B Claims, or portion of the Exit Funding provided by holders of Allowed Class 1B Claims, and the operations of the the Reorganized Debtor.

6.10    <u>Preservation of Rights of Action; Settlement</u>.  Except as otherwise provided herein, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with this Plan, in accordance with Section 1123(b) of the Bankruptcy Code, the Reorganized Debtor shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all Claims, Disputed Claims, rights, Causes of Action, suits and proceedings, whether in law or in equity, whether known or unknown, that the Debtor or the Estate may hold against any Person, without the approval of the Bankruptcy Court.

### ARTICLE VII

### <u>CLAIMS RESOLUTION</u>

7.1     <u>Objections to and Resolution of Claims and Plan Administrative Expenses</u>.  Except as to applications for allowances of compensation and reimbursement of expenses under Sections 330 and 503 of the Bankruptcy Code, the Debtor shall have the exclusive right to make and file objections to Claims and Plan Administrative Expenses subsequent to the Effective Date.  All objections shall be litigated to Final Order; <u>provided</u>, <u>however</u>, that the Debtor shall have the authority to compromise, settle,

otherwise resolve or withdraw any objections without further order at the Bankruptcy
Court.  The Debtor shall have ninety (90) days from the Effective Date to object to
Claims filed or asserted against the Debtor or Estate, but the Debtor may seek a an
extension of such time from the Bankruptcy Court.

7.2    Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed,
and as to which either (a) a proof of claim has been filed or deemed filed, and the
Debtor or another party in interest has filed an objection; or (b) no proof of claim has
been filed, and the Debtor has scheduled such claim as disputed, contingent, or
unliquidated.

7.3    Delay of Distribution on a Disputed Claim. No distribution will be made on account
of a Disputed Claim unless such Claim is Allowed.

7.4    Settlement of Disputed Claims. The Debtor will have the power and authority to settle
and compromise a Disputed Claim with court approval and compliance with Rule
9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE VIII

## CORPORATE ACTION

8.1    Effectuating Documents and Further Transactions. The Debtor is authorized to
execute, deliver, file, or record such contracts, instruments, releases, and other
agreements or documents and take such actions as may be necessary or appropriate to
effectuate and further evidence the terms and conditions of the Plan.

8.2    Corporate Actions.

(a)    All terms of this Plan may be put into effect and carried out without further
action by the Debtor or the board of directors of the Debtor, which shall be
deemed to have unanimously approved the implementation of the Plan and all
agreements and transactions provided for or contemplated herein; and

(b)    As necessary, the Reorganized Debtor's Certificate of Incorporation shall be
amended to provide for a sufficient number of authorized shares of its
common stock to satisfy the requirements of this Plan.

8.3    Corporate Structure.  On the Effective Date, the Reorganized Debtor will continue to
exist.

8.4    Issuance and Distribution of Reorganized Debtor Stock.  On the Effective Date, to the
extent set forth in the Plan, the Debtor's existing equity will be canceled and
Reorganized Debtor will issue the Reorganized Debtor Stock to holders of Allowed
Class 1B interests and the Class 4 Equity Interests in accordance with this Plan.

8.5    Form of Securities to be Issued; Securities Exempt from Registration.  Unless
otherwise agreed to by the Reorganized Debtor, all equity of the Reorganized Debtor
will be non-certificated.  In reliance upon Bankruptcy Code Section 1145(a), at the
time of issuance, none of the securities issued in connection with this Plan will be

registered under Section 5 of the Securities Act of 1933, as amended, or any state or local law requiring registration for the offer or sale of securities. In addition none of the securities issued in connection with this Plan will be listed on a securities exchange. The Reorganized Debtor will not participate in making a market (or facilitate making a market) in any such securities.

8.6   <u>Certain Tax Treatment; Net Operating Loss Carryforward Treatment</u>.  To the extent that Section 382($l$)(5) of the Tax Code provides an exception to the general rule of Section 382(a) of the Tax Code and such exception is available, the Debtor shall determine on or before the date that such election must be made whether it intends to utilize the exception in Section 382($l$)(5) of the Tax Code or it intends to elect out of the exception.

8.7   <u>Cancellation of Existing Securities and Agreements</u>.  On the Effective Date, except as otherwise specifically provided for in this Plan, the obligations of the any note, bond, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtor giving rise to any Claim or Equity Interest (other than any Claim or Equity Interest that is reinstated by this Plan pursuant to Section 1124 of the Bankruptcy Code or created by this Plan) shall be deemed cancelled without further act or action under any applicable agreement, law, regulation, order, or rule, and the obligations of the Debtor under those documents, agreements, or instruments shall be discharged; <u>provided</u>, <u>however</u>, notwithstanding the foregoing, any indenture or other agreement that governs the rights of the holder of a Claim or Equity Interest shall continue in effect solely for purposes of allowing that holder to receive Distributions under this Plan.

## ARTICLE VIII

## VOTING AND DISTRIBUTIONS UNDER THE PLAN

9.1.   <u>Impaired Classes to Vote</u>.  Except to the extent a Class of Claims or Equity Interest is deemed to have accepted or rejected this Plan, each holder of a Claim or Equity Interest in an Impaired Class shall be entitled to vote to accept or reject this Plan as provided in such order as is entered by the Bankruptcy Court establishing procedures with respect to the solicitation and tabulation of votes to accept or reject this Plan, or any other order or orders of the Bankruptcy Court.

9.2.   <u>Acceptance by Class of Claims</u>.  An Impaired Class of Claims shall have accepted a Plan if the Plan is accepted by at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have voted to accept or reject the Plan.  Unimpaired Classes are conclusively presumed to have accepted the Plan.

9.3.   <u>Elimination of Vacant Classes</u>.  Any Class of Claims or Equity Interests that does not have a Claim or Equity Interest as of the date of the Confirmation Hearing shall be deemed eliminated from this Plan for all purposes.

9.4.   <u>Nonconsensual Confirmation</u>.  With respect to each Impaired Class of Claims that is deemed to reject the Plan or rejects the Plan, the Debtor will request that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code and reserves the right to amend the plan to the extent necessary to obtain entry of the Confirmation Order.

## ARTICLE X

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

10.1   <u>Rejection of Executory Contracts and Unexpired Leases</u>.  Any executory contracts or unexpired leases (other than Insurance Policies) which (a) have not expired by their own terms on or prior to the Confirmation Date; (b) have not been assumed and assigned or rejected with the approval of the Bankruptcy Court on or prior to the Confirmation Date; or (c) are not the subject of a motion to assume or reject the same which is pending at the time of the Confirmation Date, shall be deemed rejected by the Debtor on the Confirmation Date, and the entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such rejections pursuant to Sections 365(a) and 1123 of the Bankruptcy Code.

## ARTICLE XI

## PROVISIONS REGARDING INJUNCTION AND RELEASES

11.1   **Injunction.  As of the Effective Date of the Plan, all persons who have held, hold or may hold Claims against any of the Debtor, whether arising prior to or subsequent to the Confirmation Date, or who have held, hold or may hold interests acquired on or before the date of this Order, shall be permanently enjoined from taking any of the following action with respect to such Claims or interests by (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against any of the assets of this Estate being administered under the Plan; (b) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award,  decree or order against any of the assets of this estate being administered under the Plan; (c) creating, perfecting or otherwise enforcing in any manner,  directly or indirectly,  any encumbrance of any kind against any asset of this estate being administered under the Plan; (d) asserting any set-off, right of subrogation or recoupment of any kind, directly or indirectly, against any obligation due the Debtor, any of its assets, and (e) proceeding in any manner in any place whatsoever that does not conform to or comply with the provisions of the Plan or this Order; <u>provided  however</u>, that nothing in this section will in any way limit the ability of a holder of a Claim  or interest  to take action to enforce the provisions of the Plan.**

11.2   <u>Releases</u>.  Releasor Parties shall be deemed to forever release, waive and discharge each of the Released Persons from any and all claims, obligations, rights, suits,

damages, Causes of Action, remedies and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that the Releasor Party, as the case may be, would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of a holder of any Claim or Interest or other Person or Entity.

11.3   <u>Limited Releases By the Debtor</u>.  Except as otherwise specifically provided in this Plan, as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtor in its individual capacity and as the Debtor-in-possession shall be deemed to forever release, waive and discharge each of the Released Persons from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that the Debtor would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of a holder of any Claim or interest or other Person or Entity, based in whole or in part upon any act or omission, fact, representation, transaction, agreement, event or other occurrence taking place on or before the Effective Date other than claims or liabilities arising out of or relating to (a) any act or omission of a Released Person that constitutes (i) a failure to perform the duty to act in good faith, with the care of an ordinarily prudent person and in a matter the Released Person reasonably believed to be in the best interest of the Debtor (to the extent such duty is imposed by applicable non-bankruptcy law); or (ii) such failure to perform constitutes willful misconduct or reckless, or gross negligence.

## ARTICLE XII

## <u>PROVISIONS REGARDING CONDITIONS PRECEDENT TO EFFECTIVE DATE AND EFFECTS OF CONFIRMATION</u>

12.1   <u>Conditions Precedent to Effectiveness</u>.  The Plan shall not become effective unless and until the following conditions shall have been satisfied or waived:

(a) the Confirmation Order, in form and substance reasonably acceptable to the Debtor, shall have been entered by the Bankruptcy Court and shall have become a Final Order;

(b) all actions, other documents and agreements necessary to implement the Plan shall have been effected or executed and delivered;

(c) the stockholdings in the Reorganized Debtor held by (i) the holders of Equity Interests as of the Petition Date who remain as shareholders of the Reorganized Debtor on the Confirmation Date; and (ii) the holders of the Class 1D Secured Claims who receive shares of common stock under the Plan shall represent more than 50% of the Reorganized Debtor Stock; and

(d) the Reorganized Debtor shall have received $250,000 in Exit Funding from the Class 1B Class and the Class 4 Class.

12.2    <u>Waiver of Conditions</u>.    The Debtor may waive one or more of the conditions precedent to effectiveness of the Plan.

12.3    <u>Continuation of Bankruptcy Injunction or Stays</u>.    All injunctions or stays provided for in the Chapter 11 Case under Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

12.4    <u>Setoffs</u>.    Except as otherwise provided in this Plan, nothing contained in this Plan shall constitute a waiver or release by the Estate of any rights of setoff the Estate may have against any Person.

**ARTICLE XIII**
**RETENTION OF JURISDICTION**

13.1    <u>Retention of Jurisdiction</u>.    The Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, and related to, the Chapter 11 Case, the Plan, and pursuant to, and for the purposes of, Sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

13.2    To hear and determine Avoidance Actions or matters related thereunder to enable the Debtor to prosecute Avoidance Actions;

    (a)    To hear and determine Avoidance Actions or matters related thereunder to enable the Debtor to prosecute Avoidance Actions;

    (b)    To hear and determine any and all objections to the allowance of any Claims or any controversies as to the classification of any Claims or to liquidate or estimate any Disputed Claim, provided that only the Debtor may file objections to Claims;

    (c)    To hear and determine any and all applications by Professionals for compensation and reimbursement of expenses;

    (d)    To hear and determine any and all pending applications for the rejection or assumption of executory contracts and unexpired leases, and fix and allow any Claims resulting therefrom;

    (e)    To enforce the provisions of the Plan;

    (f)    To correct any defect, cure any omission, or reconcile any inconsistency in the Plan or in the Confirmation Order, as may be necessary to carry out the purpose and the intent of the Plan;

    (g)    To determine any Claim or liability to a governmental unit which may be asserted as a result of the transactions contemplated herein;

    (h)    To hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code; and

    (i)    To determine such other matters as may be provided for in the Confirmation Order or as may be authorized under the provisions of the Bankruptcy Code.

# ARTICLE XIV
## MISCELLANEOUS PROVISIONS

14.1  <u>Effective Date of Plan</u>. The effective date of this Plan is the eleventh (11th) business day following the date of the entry of the Confirmation Order. But if a stay of the Confirmation Order is in effect on that date, the Effective Date will be the first business day after that date on which no stay of the Confirmation Order is in effect, provided that the Confirmation Order has not been vacated.

14.2  <u>Severability</u>. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

14.3  <u>Binding Effect</u>. The rights and obligations of any Person or Entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such Entity or Person.

14.4  <u>Controlling Effect</u>. Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Delaware govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

14.5  <u>Corporate Governance</u>. Upon the Effective Date, the Debtor's articles of organization will be amended to prohibit the issuance of non-voting equity and any class of equity having voting priority over another class as required by required by §1123(a)(6) of the Code.)

14.6  <u>Exemption from Transfer Taxes</u>.   In accordance with Section 1146(c) of the Bankruptcy Code, (a) bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan, or the transfer or sale of any real or personal property of the Debtor pursuant to, in implementation of, or as contemplated by the Plan; (b) the making, delivery, creation, assignment, amendment or recording of any note or other obligation for the payment of money or any mortgage, deed of trust or other security interest under, in furtherance of, or in connection with the Plan, the issuance, renewal, modification or securing of indebtedness by such means; and (c) the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the Confirmation Order, shall not be subject to any document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment.   Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax or similar tax.

14.7    <u>Exculpation</u>.    Neither the Debtor nor any of its, officers, directors, employees, advisors, agents or Professionals shall have or incur any liability to any holder of a Claim or Equity Interest for any act or omission in connection with, related to, or arising out of, the Chapter 11 Case, the preparation or formulation of the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan, except for willful misconduct or gross negligence, and, in all respects, the Debtor, and each of its officers, directors, employees, advisors, agents and Professionals shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan; <u>provided</u>, <u>however</u>, that nothing in the Plan shall, or shall be deemed to, release or exculpate such parties with respect to their respective obligations or covenants arising pursuant to this Plan.

14.8    <u>Amendment or Modification of the Plan</u>.    Alterations, amendments or modifications of the Plan may be proposed in writing by the Debtor at any time prior to the Confirmation Date, provided that the Plan, as altered, amended or modified, satisfies the conditions of Sections 1122 and 1123 of the Bankruptcy Code, and the Debtor shall have complied with Section 1125 of the Bankruptcy Code.  The Plan may be altered, amended or modified at any time before or after the Confirmation Date and before substantial consummation by the Debtor, provided that the Plan, as altered, amended or modified, satisfies the requirements of Sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under Section 1129 of the Bankruptcy Code. A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder.  The Debtor may, without notice to holders of Claims insofar as it does not materially and adversely affect the interests of any such holders, correct any defect or omission in this Plan and any exhibit hereto or in any Plan Document.

14.9    <u>Revocation or Withdrawal of the Plan</u>.  the Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date.  If, until such approval, the Debtor revokes or withdraws the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void.  In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor.

14.10    <u>Binding Effect</u>.  The rights, duties and obligations of any Person named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person.

14.11    <u>Notices</u>.  All notices, requests and demands to or upon the Debtor or the Debtor shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

|  |  |
|---|---|
| If to the Debtor: | QVL Pharmacy Holdings, Inc. Debtor-in-Possession
800 Boylston Street; 16th Floor
Boston, MA 02199 |
| with copies to: | Robert P. Mahoney
Chief Restructuring Officer
QVL Pharmacy Holdings, Inc. Debtor-in-Possession
929 White Plains Road; Suite #305
Trumbull, CT 06611 |
| and to: | Todd Gordon, Esq.
The Gordon Law Firm LLP
River Place
57 River Street, Suite 206
Wellesley, Massachusetts 02481 |

14.12  <u>Governing Law</u>.  Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent the Plan provides otherwise, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflicts of law of such jurisdiction.

14.13  <u>Withholding and Reporting Requirements</u>.  In connection with the consummation of the Plan, the Debtor and the Debtor shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements.

14.14  <u>Post-Confirmation Fees; Final Decree</u>.  the Debtor shall be responsible for the payment of any post-confirmation fees due pursuant to 28 U.S.C. 1930(a)(6) and the filing of post-confirmation reports, until a final decree is entered.  A final decree shall be entered as soon as practicable after final distributions have been made under this Plan.

14.15  <u>Headings</u>.  Headings are used in the Plan for convenience and reference only, and shall not constitute a part of the Plan for any other purpose.

14.16  <u>Filing of Additional Documents</u>.  On or before substantial consummation of the Plan, the Debtor shall file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

14.17  <u>Inconsistency</u>.  In the event of any inconsistency between the Plan and the Disclosure Statement or the Plan Documents or any other instrument or document created or executed pursuant to the Plan, the Plan shall govern.

## ARTICLE XV
## <u>DISCHARGE</u>

15.1   <u>Discharge</u>. On the confirmation date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in §1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt; (i) imposed by this plan; (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with rule 4007(c) of the Federal Rules of Bankruptcy Procedure; or (iii) of a kind specified in § 1141(d)(6)(B).

Respectfully Submitted,

QVL Pharmacy Holdings, Inc., Debtor

By its attorneys,

/s/ Katherine P. Lubitz
Stephen F. Gordon (BBO No. 203600)
Todd B. Gordon (BBO No. 652482)
Katherine P. Lubitz (BBO No. 679045)
The Gordon Law Firm LLP
River Place
57 River Street, Suite 206
Wellesley, MA 02481
Tel:    (617) 261-0100
Fax:    (617) 261-0789
Email: sgordon@gordonfirm.com
        tgordon@gordonfirm.com
Dated: June 7, 2016            klubitz@gordonfirm.com

P:\Clients-GLF\QVL Pharmacy\Plan Pleadings\QVL Plan of Reorganization- FINAL.docx