UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| QVL PHARMACY HOLDINGS, INC., ) | Case No. 15-14983-FJB |
| ) | |
| Debtor. ) | |

ORDER CONFIRMING MODIFIED THIRD AMENDED PLAN OF
REORGANIZATION PROPOSED BY THE DEBTOR, QVL PHARMACY HOLDINGS, INC.

On February 14, 2017, the Court held a hearing in this Chapter 11 case on confirmation of the Modified Third Amended Plan of Reorganization proposed by the Debtor, QVL Pharmacy Holdings, Inc. dated January 27, 2017 (the "Plan"). The Court finds that due and sufficient notice of the hearing on confirmation was given, as evidenced by the certificate of service filed in this matter. All capitalized terms used, but not defined herein, shall have the meanings ascribed to them in the Plan.

At the hearing, the Court heard from counsel to the Debtor and accepted the Affidavit of Katherine P. Lubitz, Esq. and attached Report of Plan Voting (the "Affidavit of Balloting Results") and the Declaration of Jacen Dinoff in Support of Confirmation of the Debtor's Modified Third Amended Plan of Reorganization ("Confirmation Declaration"). There was one objection to the Plan which has been withdrawn as set forth in the Settlement Agreement between the Debtor and Asclepius Panacea GP, LLC, Asclepius Panacea, LLC, Daily Pharmacy GP, LLC, Daily Pharmacy, LLC and Toth Enterprises II, P.A. D/B/A Victory Medical Center (together the "Texas Claimants") attached to the Plan (the "Settlement Agreement"). Furthermore, under the Settlement Agreement, the Texas Claimants (designated as holders of Class 4 Claims under the Plan) have agreed to accept the Plan. Based on the Affidavit of Balloting Results, the Confirmation Declaration, the

representations and arguments of counsel, and all prior proceedings and evidence taken in this case, the Court makes the following findings of fact and rulings of law:

1.	The Plan complies with the applicable provisions of Title 11 and the Debtor as proponent of the Plan has complied with the applicable provisions of Title 11.

2.	The Plan has been proposed in good faith and not by any means forbidden by law.

3.	The Plan is proposed for the legitimate purpose of maximizing the value of the Estate's assets and paying a dividend on the Allowed Claims.  Furthermore, the Debtor plans to develop its intellectual property and institutional knowledge into a software product for sale or license to retail pharmacies.  The Debtor seeks reorganize in order to seek relief from certain unpaid liabilities and clean up its balance sheet.  Thus, the Plan has been proposed in good faith.

4.	Any payments to be made by the Debtor for services are subject to application to and approval by this Court.

5.	On the Effective Date, with respect to the corporate structure, the Debtor will continue to exist.  Jacen Dinoff who is currently serving as the Chief Restructuring Officer, will serve as the sole Trustee of the Liquidating Trust after Confirmation.   Jacen Dinoff, in his capacity as Liquidating Trustee of the Liquidating Trust, shall act in the best interest of the General Unsecured Creditors.  Under the Plan, White Winston has committed to pay the Liquidating Trustee's reasonable fees and expenses incurred in conjunction with this role.  Chad Collins will continue on in his role as Chief Executive Officer of the Debtor.

6.	All Classes of Impaired Creditors entitled to vote, voted to accept the Plan (Classes 1B, 1C, 1D and 3).  Class 4, which is Impaired, has agreed, under the Settlement Agreement, to accept the Plan.  Class 5, which is Impaired, was deemed to reject the Plan.  Each holder of a claim in a class which is Impaired that has not accepted the Plan will receive or retain under the Plan, on

2

account of such claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that it would receive if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code on such date.

7. If this Plan is not confirmed and the case is converted to a Chapter 7 liquidation, the Unsecured Creditors will receive nothing. The Plan provides for a guaranteed dividend to Allowed Unsecured Claims and is therefore in the best interest of the Creditors.

8. There was one objection to the Plan which has been withdrawn pursuant to the Settlement Agreement.

9. The Plan provides for the payment of Administrative Claims as allowed by the Court upon the Effective Date of the Plan or as agreed to between the administrative expense claimholder and the Debtors.

10. Holders of Priority Tax Claims will be paid in full in amounts approved by the Court on the Effective Date.

11. At least one class of claims that is impaired under the Plan has accepted the Plan (Class 3). A total of five (5) of the Class 3 General Unsecured Creditors voted on the Plan representing a total of $100,777.93 in claims. Four (4) out of the five (5) voted to accept the Plan, their claims totaling $82,488.28. Therefore, of those that have voted, about 82% in amount and 80% in number of the allowed claims have accepted the Plan. That has been determined without including any acceptance of the Plan by any insider.

12. Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization. The Reorganized Debtor has a viable business plan, the ability to get financing and a funded Plan of Reorganization ensuring recovery for its creditors.

13. All quarterly fees payable under section 1930 of title 28, have been paid, and the Plan provides for the payment of all such fees on the Effective Date.

14. The Liquidating Trustee will be responsible for timely payment of fees incurred by the Debtor under 28 U.S.C. § 1930(a)(6) until the case is closed. After confirmation, the Liquidating Trustee will serve the United States Trustee with a quarterly financial report for each quarter (or portion thereof) that the case remains open. The quarterly financial report shall include the following:

> (1) a statement of all disbursements made during the quarter by or on behalf of the Liquidating Trustee, whether or not pursuant to the Plan;
>
> (2) a summary, by class, of amounts distributed or property transferred to each recipient under the Plan, and an explanation of the failure to make any distributions or transfers of property under the Plan, if any;
>
> (3) The Liquidating Trustee's projections as to his continuing ability to comply with the terms of the Plan;
>
> (4) a description of any other factors which may, in the Liquidating Trustee's view, materially affect his ability to complete his obligations under the Plan; and
>
> (5) an estimated date when an application for final decree will be filed with the court (in the case of the final quarterly disbursement report, the date the decree was filed).

15. The Plan has not been filed for the purpose of the avoidance of taxes or the application of Section 5 of the Securities Act of 1933, as amended.

16. The Court finds that the Plan is feasible.

17. The Plan as proposed by the Debtor is confirmed and its terms, including all exhibits thereto are hereby approved by this Court.

18. The Plan and its provisions shall be binding upon the Debtor, any entity issuing securities under the Plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor,

4

equity security holder, or general partner is impaired under the Plan and whether or not such creditor, equity security holder, or general partner has accepted the Plan.

19. In accordance with the Plan and the terms of this Order, the property of the estate shall be vested in the Debtor on the Effective Date.

20. Except as otherwise provided by the Plan and this Order, on the Effective Date, the property of the Debtor is free and clear of all liens, claims, encumbrances and interests of creditors and equity security holders.

21. The Debtor is hereby authorized to take such steps and execute and deliver such documents and to pay all fees and expenses as may be required or appropriate to the performance of the Debtor's obligations under the Plan without further Order of this Court.

22. Upon achieving substantial consummation of the Plan, the Debtor may file a Motion for Final Decree to close the case.

23. On the Confirmation Date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in §1141(d)(1)(A) of the Bankruptcy Code, except that the Debtor will not be discharged of any debt; (i) imposed by this plan; (ii) of a kind specified in 11 U.S.C. § 1141(d)(6)(A) if a timely complaint was filed in accordance with rule 4007(c) of the Federal Rules of Bankruptcy Procedure; or (iii) of a kind specified in 11 U.S.C. § 1141(d)(6)(B).

24. As of the Confirmation Date, without further action by the Debtor or this Court, the Debtor shall be deemed to have rejected any and all executory contracts and unexpired leases to which the Debtor is a party other than contracts or leases which the Debtor has previously assumed or seeks to assume, by motion filed with the Bankruptcy Court on or before the Effective Date.

Pursuant to Rule 3002(c)(4), the Court directs that any claim arising from the rejection of an executory contract or unexpired lease of the debtor must be filed no later than **March 14, 2017.**

25. Any party holding an Administrative Claim shall file their respective final applications for allowances of compensation for services rendered and reimbursement of expenses incurred through the Confirmation Date on or before **March 31, 2017**.

26. After confirmation, the Debtor may cure any error or omission or reconcile any inconsistency in the Plan or this Order, if necessary to further the intent and purposes of the Plan, so long as the interests of creditors are not thereby materially or adversely affected.

27. Upon the entry of this Order by this Court, the Debtor shall be deemed authorized, without further order of this Court, to take any and all actions and execute and deliver any and all documents which the Debtor reasonably believes necessary or appropriate to carry out the purposes and intent of the Plan.

28. In accordance with 11 U.S.C. § 1123(b)(3)(A), the Plan incorporates and attaches the Settlement Agreement between the Debtor and the Texas Claimants. The Settlement Agreement attached to and incorporated into the Plan is hereby approved and the Debtor is hereby authorized and empowered to be bound by its terms and to execute the terms of the Settlement Agreement without any further notice to persons or entities or orders of this Court. The "Amended Claims" (as defined in the Settlement Agreement) are allowed as Class 4 Claims under the Plan, solely in accordance with the Settlement Agreement. The Holders of the Amended Claims shall receive nothing on account of the Amended Claims, and the Amended Claims shall be discharged as to the Debtors only in accordance with the Plan and paragraph 22 above. The "QVL Parties" (as defined in the Settlement Agreement) agree to allowance of the Amended Claims solely for settlement purposes, and assert that they have substantial defenses they believe are meritorious if allowance or

disallowance of the Amended Claims was determined on the merits by the Court. The "Victory Parties" dispute such contention. Accordingly, the Victory Parties, the QVL Parties, and Todd M. Enright agree, and it is hereby ORDERED, that:

    a.    Allowance of the Amended Claims is part of the settlement of the disputes between the Parties in this bankruptcy case, but allowance of the Amended Claims is not a determination of the merits of the Amended Claims in connection with any other proceeding, and

    b.    Nothing in this Confirmation Order or in any orders approving the Settlement Agreement shall (i) operate as a finding or determination of any fact or issue necessary to the determination of the matters set forth in such Amended Claims, (ii) constitute an admission by any person or entity that the Amended Claims, or any fact or issue necessary to the determination of the matters set forth in such Amended Claims have been found or determined in the Bankruptcy Cases, and/or (iii) have any preclusive effect (under principles of *res judicata*, collateral estoppel or otherwise), or will be asserted by any of the parties as preclusive, on any issue or fact arising in or related to any disputes between or among Todd Enright, White Winston or any other person or entity other than the QVL Parties and the "Victory Parties" (as defined in the Settlement Agreement), including, without limitation, in the "Texas State Action" (as defined in the Settlement Agreement).

29.    Upon the Effective Date of the Plan, the Debtor's computer equipment and accessories, which, at the option of creditor Amerisource Bergen Drug Corporation ("ABD Corp."), set forth in writing to the Chief Restructuring Officer and to the Debtor, shall be shipped at the creditor's expense to them or abandoned by such creditor; provided further, that if such written

7

election is not received by the Debtor within 10 days of notice from the Chief Restructuring Officer, the creditor shall have been deemed to have elected to abandon such assets and the Debtor shall be permitted to dispose of such assets.

30. The Bankruptcy Court shall retain jurisdiction as provided in the Plan.

31. This Order is hereby declared to be in recordable form, and this Order or a certified copy thereof, shall be accepted by any recording officer for filing and recording purposes without further or additional orders, certifications or other supporting documents.

32. The Debtor shall give notice of the entry of this Order as contemplated by Bankruptcy Rule 2002(f).

SO ORDERED.

*/s/ Frank J. Bailey*
The Honorable Frank J. Bailey
United States Bankruptcy Judge

Dated: February 17, 2017